14 CV 4120

JUDGE CAPRONI

| | |
|---|---|
| OUTTEN & GOLDEN LLP<br>Justin M. Swartz<br>Sally J. Abrahamson<br>3 Park Avenue, 29th Floor<br>New York, NY 10016<br>Telephone: (212) 245-1000 | FITAPELLI & SCHAFFER, LLP<br>Joseph A. Fitapelli<br>Brian S. Schaffer<br>Frank J. Mazzaferro<br>475 Park Avenue South, 12th Floor<br>New York, NY 10016<br>Telephone: (212) 300-0375 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATAVIA THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>APPLE-METRO, INC. d/b/a APPLEBEE'S, ZANE TANKEL, and ROY RAEBURN,<br><br>Defendants. | No.<br><br>COLLECTIVE<br>ACTION COMPLAINT<br><br>Jury Trial Demanded |



RECEIVED JUN 06 2014 S.D.N.Y.

Plaintiff Atavia Thomas, individually and on behalf of all others similarly situated, by and through her attorneys, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover minimum wages, overtime compensation, unlawful deductions, and other wages for Plaintiff and similarly situated co-workers – servers, bussers, runners, bartenders, barbacks, hosts, and other "tipped workers" – (collectively "tipped workers") who work or have worked at Apple-Metro, Inc. ("Applebee's").

2. Plaintiff is a former server and bartender at Applebee's restaurants in New York City.

3. Defendants Zane Tankel ("Tankel"), Chief Executive Officer, and Roy Raeburn

("Raeburn"), President, own and operate thirty-eight Applebee's restaurants throughout five New York City boroughs, as well as in Westchester and Rockland Counties.

4. According to its website, Applebee's "continues to exceed sales expectations in an uncertain and sometimes difficult marketplace."[1]

5. In an interview with the *New York Post*, Tankel described himself as a "cowboy capitalist" and stated an expansion in labor laws would be a "no-win for the private sector."[2]

6. While Applebee's sales surpass expectations, Defendants' treatment of workers falls below the mandatory legal minimum.

7. The Plaintiff brings this action on behalf of herself and similarly situated current and former employees who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawfully earned wages.

8. Defendants pay Plaintiff and other similarly situated "tipped workers" sub-minimum hourly wages, purporting to take a "tip credit" under the FLSA.

9. Defendants are not allowed to take a "tip credit" because Defendants have failed to meet the strict requirements that would allow them to do so.

10. Defendants' policy is to consistently require tipped workers to perform general food preparation, cleaning, maintenance work, and/or other non-tipped work ("side work") for more than twenty percent of their time at work.

11. The duties that Defendants require tipped workers to perform are duties that are

---

[1]   http://www.applemetrorestaurants.com/en/about.
[2]   http://nypost.com/2011/09/04/local-applebees-owner-to-obama-step-aside-let-us-create-jobs/.

customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

12. The "side work" that Defendants require tipped workers to perform includes, but is not limited to: (1) setting up the expeditor line in the back of the house (filling bins with ice, lettuce, tomatoes, condiments, and sauces); (2) cutting lemons and limes; (3) restocking cups and "to-go" containers; (4) filling ketchup bottles, salt & pepper shakers, and sugar caddies; (5) sweeping and mopping floors in the kitchen and dining area; (6) rolling large quantities of silverware; (7) wiping down/dusting tables and ledges; (8) setting up the beverage station; (9) breaking down and cleaning the coffee machine, soda machine, and expeditor's line; and (10) taking out garbage.

13. The "side work" is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts. Moreover, as these duties were not related to Plaintiff's duties as a tipped worker, Plaintiff is entitled to the full minimum wage.

14. Defendants' timekeeping system is capable of tracking multiple job codes for different work assignments.

15. Despite having the ability to track multiple job codes, Defendants do not allow tipped workers to record the hours they spend performing non-tipped "side work."

16. Defendants required Plaintiff to contribute three percent of her gross sales to her managers, who then redistributed the money to bussers, hosts, and bartenders.

17. In order to clock out, Defendants required Plaintiff to confirm on Defendants' computer that she earned tips that equal fifteen percent of her gross sales for the night.

18. Plaintiff often earned tips far below fifteen percent of her gross sales in a night.

- 4 -

19. Defendants, therefore, deducted taxes from Plaintiff's pay on tips that Plaintiff did not earn.

20. Defendants' practices regarding tips cause tipped workers to earn compensation well below the minimum wage.

21. Defendants also maintain a policy and practice whereby tipped workers are encouraged to work off-the-clock.

22. For example, managers have informed Plaintiff that she should punch in only after she received her first customer rather than when she arrived at the restaurant.

23. Managers often punched Plaintiff out after she completed serving tables in order to reduce the number of recorded hours worked.

24. Although Plaintiff continued to perform work for Defendants after her managers clocked her out, she did so off-the-clock and without compensation.

25. Some of the work that Plaintiff performed off-the-clock was work in excess of forty hours in a workweek.

26. While working off-the-clock, Plaintiff was engaged in non-tip producing "side work," as described above.

27. Defendants also "shaved" time from the total number of hours Plaintiff worked and recorded in her time records.

28. Defendants also maintain a policy and practice whereby they take unlawful deductions from tipped workers' wages.

29. Defendants require tipped workers to pay customers' bills when customers walk out of the restaurant without paying for their meals.

30. Defendants require tipped workers to pay for computer swipe cards, nametags, and/or aprons (which contained the Applebee's Logo) if they lose the original item provide to them by Defendants.

31. Defendants also fail to pay tipped workers overtime pay and off-the-clock pay.

32. Plaintiff also, individually, brings claims against Defendants under 29 U.S.C. § 215 and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

34. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

35. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

36. Defendants are subject to personal jurisdiction in New York.

37. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

38. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

### Plaintiff

**Atavia Thomas**

39. Atavia Thomas ("Thomas" or "Plaintiff") is an adult individual who is a resident of New York, New York.

40. Thomas was employed by Defendants as a server at the Applebee's restaurant located at 76 W. 225th Street, Bronx, New York from in or around August 2004 to January 2014, except for a period of approximately a year in 2008, when she worked at the 102 N End Ave., New York, New York location.

41. Thomas is a covered employee within the meanings of the FLSA and the NYLL.

### Defendant

**Apple-Metro, Inc.**

42. Applebee's principal executive office is located at 500 Mamaroneck Ave., Harrison, New York.

43. Applebee's is an employer within the meanings of the FLSA.

44. Applebee's is the entity printed on Plaintiff's paystubs.

45. Applebee's allows employees to freely transfer between, or be shared by, the various Applebee's restaurants it operates without retraining such employees.

46. Applebee's applies the same employment policies, practices, and procedures to all tipped workers at its restaurants, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, tips, and the making of unlawful deductions.

**Zane Tankel**

47. Tankel is a resident of New York.

48. Tankel is the Chief Executive Officer at Applebee's.

49. Tankel is an agent of Applebee's.

50. Tankel maintains control, oversight, and direction over the operation of Applebee's facilities, including its employment practices.

51. At all relevant times, Tankel has had power over personnel decisions at Applebee's.

52. At all times relevant, Tankel has had the power to hire and fire employees.

53. At all times relevant, Tankel has had power over compensation decisions at Applebee's, including the power to set employee pay and the policies that give rise to Plaintiff's claims.

54. Tankel is "intensely involved in the day-to-day operation and control of Applebee's."[3]

55. Tankel has power over payroll decisions.

56. At all times relevant, Tankel has also had the power to stop any illegal pay practices that harmed Plaintiff.

57. Tankel is a covered employer within the meaning of the FLSA, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated workers.

**Roy Raeburn**

58. Raeburn is a resident of New York.

59. Raeburn is the President of Applebee's.

---

[3] http://www.applemetrorestaurants.com/management_team.

60. Raeburn is an agent of Applebee's.

61. Raeburn maintains control, oversight, and direction over the operation of Applebee's facilities, including its employment practices.

62. At all relevant times, Raeburn has had power over personnel decisions at Applebee's.

63. At all times relevant, Raeburn has had the power to hire and fire employees.

64. At all times relevant, Raeburn has had power over compensation decisions at Applebee's, including the power to set employee pay and the policies that give rise to Plaintiff's claims.

65. Raeburn is "intensely involved in the day-to-day operation and control of Applebee's."[4]

66. Raeburn has power over payroll decisions.

67. At all times relevant, Raeburn has also had the power to stop any illegal pay practices that harmed Plaintiff.

68. Raeburn is a covered employer within the meaning of the FLSA, and at all times relevant, employed and/or jointly employed Plaintiff and similarly situated workers.

## COLLECTIVE ACTION ALLEGATIONS

69. Plaintiff brings these claims for violations of the FLSA, on behalf of herself and all similarly situated current and former tipped workers employed at Applebee's restaurants owned, operated, and/or controlled by Defendants, for a period of three years prior to the filing of this Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

---

[4] http://www.applemetrorestaurants.com/management_team.

70. At all relevant times, Plaintiff and the other FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the Plaintiff at the legally required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of forty hours per workweek, and requiring tipped workers to engage in side work for more than twenty percent of their time at work. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Members.

71. Defendants' unlawful conduct, as described in this Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours that employees work.

72. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they work.

73. Defendants are aware or should have been aware that federal law required them to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty per workweek.

74. Defendants' unlawful conduct has been widespread, repeated, and consistent.

75. The First, Second, and Third Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. 216(b).

76. The FLSA Collective Members are readily ascertainable.

77. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants' records.

78. Notice can be provided to the FLSA Collective Members via first class mail to the last address known to Defendants.

## PLAINTIFF'S FACTUAL ALLEGATIONS

79. Defendants did not pay Thomas the proper minimum wages and overtime wages for all of the time that she was suffered or permitted to work each workweek.

80. Throughout the duration of her employment at Applebee's, Thomas received biweekly paychecks from Defendants that did not properly record or compensate her for all the hours that she worked.

81. Defendants paid Thomas at the New York tipped minimum wage rate.

82. Defendants did not provide Thomas with notification of the tipped minimum wage or tip credit provisions of the FLSA, or their intent to apply a tip credit to her wages.

83. Defendants required Thomas to spend at least twenty percent of her shift performing non-tipped "side work" unrelated to her duties as a tipped worker. These duties included, but were not limited to, completing the ten-point station check, inspecting and cleaning ketchup containers and salt and pepper shakers, running silverware through the dishwashing machine, sorting silverware, rolling silverware, breaking down side stands, breaking down and cleaning the soda machine and coffee machine, setting up burger bins, cutting lemons, sweeping, wiping down booths and chairs, stocking plates, napkins, cups, and to-go containers, cleaning doors and windows, and setting up and breaking down the expeditor line.

84. Although Thomas should have been paid the full minimum wage, Defendants paid her an hourly rate that fell below the minimum wage.

85. Defendants frequently required Thomas to perform work off-the-clock without compensation.

- 11 -

86. For instance, Defendants often instructed Thomas to punch into the time clock when she started to serve her first table, rather than when she arrived at work. Defendants only compensated Thomas for the time after she punched in. The Applebee's managers who instructed Thomas to only clock in when she started serving her first table included Chris Doe, among others.

87. Defendants often punched Thomas out when she finished serving tables but required her to continue working, performing "side work," off-the-clock. Defendants did not compensate Thomas for this time. Applebee's managers who punched Thomas out when she finished serving tables, but still had "side work" to complete, include: Antoine Blaine, among others.

88. Defendants required Thomas to contribute three percent of her nightly gross sales to her managers, who then redistributed the money to bussers, hosts, and bartenders.

89. In order to clock out, Thomas was required to confirm on Defendants' computer that her earned tips equaled fifteen percent of her gross sales for the night.

90. Thomas often earned tips far below fifteen percent of her gross sales in a night.

91. Defendants, therefore, deducted taxes from Thomas's pay for tips that Thomas had not earned.

92. Defendants suffered or permitted Thomas to work more than forty hours per week, including weeks during which she was not paid at all for some of her time.

93. As Thomas typically worked five to six shifts per week, some of the above mentioned off-the-clock work was in excess of forty hours per week.

94. Some weeks, Thomas worked between forty and fifty hours per week without proper overtime compensation.

95. During her employment, Thomas generally worked five to six of the following shifts:

- At the 76 W. 225th Street, Bronx, New York location, morning shifts started at approximately 6:30 a.m. and ended at approximately 5:00 p.m. Lunch shifts started at approximately 10:00 a.m. and ended at approximately 5:00 p.m. Dinner shifts start at approximately 5:00 p.m. and end between 12:00 a.m. and 2:00 a.m.

- At the 102 N End Ave., New York, New York location, lunch shifts start at approximately 10:30 a.m. and end at approximately 5:00 p.m. Dinner shifts start at approximately 5:00 p.m. and end between 12:00 a.m. and 2:00 a.m.

96. The overtime premiums Defendants paid Thomas for hours worked in excess of 40 per workweek were not calculated at 1.5 times the full minimum wage rate.

97. Defendants required Thomas to wear a uniform consisting of an apron with the Applebee's logo, a name tag, black slacks, black shoes, and black socks.

98. Defendants only provided Thomas with one apron and one name tag.

99. Thomas purchased approximately seven aprons for $7 each and five name tags for $5 each to replace ones that she lost.

100. Defendants regularly took deductions from Thomas's paychecks. For instance, Defendants required Thomas to use a swipe card to log in and out of Defendants' timekeeping system. Defendants gave her one swipe card, but on approximately ten occasions, Defendants required Thomas to pay $5 to replace the cards that she lost.

101. Defendants did not keep accurate records of wages or tips earned, or of hours worked by Thomas.

102. In December 2013, Remy Doe, an Applebee's manager, called a meeting with Thomas and two other servers.

103. At that meeting, Remy Doe informed Thomas that the company overpaid her by approximately $400.

104. Thomas requested documentations of the alleged overpayment.

105. On December 16, 2013, Remy Doe met with Thomas and two other servers again.

106. Again, Remy Doe instructed Thomas to pay Defendants $400.

107. Thomas repeated her request for documentation regarding the alleged overpayment.

108. Remy Doe informed Thomas that if she pursued getting documentation of the overpayment, he would be forced to "take matters into his own hands."

109. Thomas interpreted Remy Doe's statement to mean that Thomas would be fired if she did not pay Defendants $400.

110. Thomas stated that she would not pay Defendants $400 for the alleged overpayment without seeing evidence.

111. On January 31, 2014, Defendants terminated Thomas after almost ten years of employment.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

112. Plaintiff, on behalf of herself and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

113. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Collective Action Complaint.

114. At all relevant times, each of the Defendants have been, and continues to be, an employer engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, each Defendant has employed "employee[s]," including Plaintiff and the FLSA Collective Members.

115. Defendants were required to pay directly to Plaintiff and the FLSA Collective Members the applicable New York State minimum wage rate for all hours worked.

116. Defendants failed to pay Plaintiff and the FLSA Collective Members the minimum wages to which they are entitled under the FLSA.

117. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiff and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

118. Defendants also required Plaintiff and the FLSA Collective Members to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their time at work. During these periods, Defendants compensated Plaintiff and the FLSA Collective Members at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

119. Defendants' unlawful conduct, as described in this Collective Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

120. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

121. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts,

liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
#### (Brought on behalf of Plaintiff and the FLSA Collective)

122. Plaintiff, on behalf of herself and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

123. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective Members.

124. Plaintiff and the FLSA Collective Members worked in excess of forty hours during some workweeks in the relevant period.

125. Defendants willfully failed to pay Plaintiff and FLSA Collective Members one-and-one-half times the full minimum wage for all work in excess of forty hours per workweek. Defendants' unlawful conduct, as described in this Collective Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

126. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

127. As a result of Defendants' violations of the FLSA, Plaintiff and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined

at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CLAIM FOR RELIEF
### Fair Labor Standards Act– Equipment Purchase and Maintenance
### (Brought on behalf of Plaintiff and the FLSA Collective)

128. Plaintiff, on behalf of herself and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

129. Defendants required Plaintiff and the FLSA Collective Members to purchase aprons, name tags, and swipe cards required for Defendants' work.

130. The cost of aprons, name tags, and swipe cards purchased by Plaintiff and the FLSA Collective Members resulted in them being paid less than the full minimum wage and overtime pay rate, in violation 29 U.S.C. §§ 201 *et. seq.* and 29 C.F.R. § 531.35.

### FOURTH CAUSE OF ACTION
### Fair Labor Standards Act – Retaliation
### (Brought on behalf of Plaintiff Atavia Thomas)

131. Thomas realleges and incorporates by reference all allegations in all preceding paragraphs.

132. Thomas attempted to enforce her rights under the FLSA by making an oral complaint to her supervisor regarding an illegal deduction.

133. Thomas complaining is protected activity under 29 U.S.C. § 215(a)(3).

134. In response to Thomas's complaint, Defendants retaliated against her by terminating her.

135. A reasonable employee would have found this retaliation to be materially adverse. This retaliation would dissuade a reasonable employee from making or supporting a complaint about wage and hour violations.

- 17 -

136. Thomas has suffered damages, including but not limited to back pay, front pay, emotional distress damages and reputational injury as a result of Defendants' retaliation.

137. Defendants' retaliation altered the terms and conditions of Thomas's employment.

138. Thomas is entitled to equitable relief, monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

### FIFTH CAUSE OF ACTION
### New York Labor Law – Retaliation
### (Brought on behalf of Plaintiff Atavia Thomas)

139. Thomas realleges and incorporates by reference all allegations in all preceding paragraphs.

140. Thomas attempted to enforce her rights under the NYLL by making an oral complaint to her supervisor regarding an illegal deduction.

141. In response to Thomas's complaint, Defendants retaliated against her by terminating her.

142. Defendants retaliated against Thomas, as alleged herein, in order to interfere with her attempts to enforce her rights under the NYLL.

143. Thomas seeks front pay and all compensatory and punitive damages relating to her wrongful discharge.

144. Notice of this claim has been served upon the Attorney General pursuant to NYLL § 215(2).

145. Thomas is entitled to equitable relief, monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief:

A. Designation of this action as a collective action on behalf of the FLSA Collective Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B. Unpaid minimum wages, overtime pay, reimbursement for unlawful deductions and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Monetary relief including but not limited to compensatory and punitive damages for Thomas to address her FLSA retaliation claim;

D. Reasonable attorneys' fees and costs of the action; and

E. Such other relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Collective Action Complaint.

Dated:     New York, New York
           June 6, 2014

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By: _/s/ Sally J. Abrahamson_
Sally J. Abrahamson

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Sally J. Abrahamson
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Putative Collective*